# EXHIBIT C

State of Delaware

**Independent Instructor Agreement**

This Independent Instructor Agreement (the "**Agreement**") is made as of the 19th day of July 2022 (the "Effective Date") by and between Conflict Resolution Training, Inc., a Delaware corporation, and Katherine Y. Ko, Ph.D. & Associates, A Psychological Corporation DBA Perfect Harmony, Inc., ("Instructor") an Independent Contractor, located at 4950 Barranca Pkwy, Suite 310-A, Irvine, CA (each a "Party" and collectively, the "Parties".)

**WHEREAS**, Conflict Resolution Training, Inc. is in the business of providing professional development, talent development and continuing education classes and programs throughout the United States; and

**WHEREAS**, Instructor desires to learn and teach Conflict Resolution Training, Inc. training programs as an independent contractor within Orange County, California, (the Instructor Training Area); and

**WHEREAS**, Conflict Resolution Training, Inc. wishes to engage Instructor and Instructor is willing to act as an independent contractor to render the services as provided herein in accordance with the terms and conditions hereinafter set forth.

**NOW THEREFORE**, in consideration of the mutual covenants, terms, and conditions set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Instructor Engagement**. Conflict Resolution Training, Inc. hereby appoints Instructor, and Instructor accepts such appointment, during the Term (as defined hereafter) to act as an Independent Instructor Conflict Resolution Training, Inc.'s within the Instructor Training Area.

2. **Term of Agreement**. The initial term of this Agreement shall commence on the Effective Date and will continue through December 31, 2023 (the "Initial Term") unless terminated earlier in accordance with the terms of this Agreement. The Parties may mutually agree by written agreement, prior to the expiration of the Initial Term or any Renewal Term (as hereinafter defined,) as the case may be, to extend the term of this Agreement for an additional period to be agreed upon, subject to early termination, in accordance with this Agreement (any such period being the "Renewal Term"). The Initial Term, together with the Renewal Term, if exercised, shall be referred to as the "Term."

3. **Parties' Obligations**. Conflict Resolution Training, Inc. shall (i) provide Instructor with access to Conflict Resolution Training, Inc.'s knowledge, skill, and experience in the business of teaching mediation and workplace conflict resolution, including its work product relating to its Divorce Mediation Certificate Program (DMCP) and its Workplace Conflict Resolution Program (WCR) which includes but is not limited to the content and curriculum of said training programs, training systems, methodologies and materials, all of which the Parties agree is, and shall remain, the sole property of Conflict Resolution Training, Inc. and (ii) Pay to Instructor a Service Fee (as defined herein) in accordance with Paragraph 4 hereof and (iii) provide administrative assistance with respect to the DMCP/WCR courses for which Instructor shall render services. Such assistance shall include but not be limited to communicating with program participants via telephone, email and/or website chat about course details and requirements; maintenance of a website that describes details and permits registration for DMCP/WCR sessions offered by Instructor; preparation and ordering of participant program materials; and maintaining existing continuing education credits for the DMCP/WCR in the Instructor Training Area.

1

Instructor shall (i) conduct a minimum of ten training days during the Initial Term of this Agreement, using Conflict Resolution Training, Inc.'s training programs within the Instructor Training Area. The selection of courses within the DMCP/WCR suite of courses, the locations of the training within the Instructor Training area and whether such programs shall be conducted on-site at an instructor-chosen venue or online (virtual training,) shall be determined by Instructor and Conflict Resolution Training; and Instructor shall (ii) schedule, book venues as needed, and promote the DMCP/WCR and its course-related materials in a manner that is reasonably satisfactory to Conflict Resolution Training, Inc.; and (iii) bear responsibility for (a) fees charged by venues selected by Instructor and in which Instructor presents the DMCP/WCR; and for (b) the Instructor's own travel-related expenses; and for (c) the cost of videotaping participant testimonials, not more than once per year, such videotaping, once produced, to be the property of Conflict Resolution Training, Inc.; and (iv) within five (5) days of the Effective Date, pay to Conflict Resolution Training, Inc. the sum of fifteen thousand ($15,000) dollars, to be held by Conflict Resolution Training, Inc. until such time as Instructor has presented the DMCP/WCR to six hundred (600) participants who have paid the full tuition price for the DMCP/WCR programs selected by Instructor within the Instructor Training Area, during the Term of this Agreement as defined in Paragraph 2 above.

In the event that Instructor does not present the DMCP/WCR to a minimum of six hundred (600) participants during the entire collective terms of the Parties' Agreement, then Conflict Resolution Training, Inc. shall be entitled to keep said sum as liquidated damages for loss of anticipated revenues under this Agreement.

## 4. Instructor Service Fee.

A. Calculation of Service Fee

(i) DMCP/WCR Tuition and Fees – Instructor shall earn a fee for services rendered ("Service Fee") equal to fifty percent (50%) of revenues generated from DMCP/WCR tuition for DMCP/WCR courses presented by Instructor in the Instructor Training Area, less 12% of the total tuition revenue, paid as an Administrative Fee to Conflict Resolution Training, Inc. and the expenses contemplated by Section 4(A) (ii) related thereto.

(ii) Expenses – Service fees shall be net of any costs incurred by Conflict Resolution Training, Inc. in connection with the DMCP/WCR presented by Instructor in the Instructor Training Area, including, without limitation, the cost of DMCP/WCR training participant materials, and a three percent (3%) credit card processing fee for payments from participants for tuition and/or program materials, whether such DMCP/WCR and/or materials are for on-site or online classes. Further, should Instructor, in their sole discretion, choose to join Conflict Resolution Training, Inc.'s current digital marketing efforts, Instructor shall reimburse Conflict Resolution Training, Inc. for such marketing effort the sum of one hundred and fifty ($150) dollars per month.

B. Service Fee Payment Terms

(i) Payment Date – Service Fees shall be payable to Instructor within thirty (30) days after Instructor's full presentation of the session of the DMCP/WCR for which revenue was earned.

(ii) Payment of Service Fees upon Termination – Upon the termination of this Agreement, whether upon the expiration of the Term, or as otherwise set forth in this Agreement, Conflict Resolution Training, Inc. shall continue to pay Instructor their Service Fees in accordance with Section 4(A) on net revenues received, due to Instructor's efforts, for a period of ninety days after the termination date. Other than as set forth in this Section 4, Instructor waives any right they may have to further compensation upon termination of the Agreement.

**5. Accounting.** Conflict Resolution Training, Inc. shall keep records of all revenue generated from Instructor initiated training programs within Instructor Training Area and submit a report to Instructor at the conclusion of each session of the DMCP/WCR presented by Instructor that contains an accounting of the Instructor's Service Fee due for said DMCP/WCR session. Such accounting shall include an itemization of revenue due, and any expenses (as contemplated in Paragraph 4) owed by Instructor. Instructor shall notify Conflict Resolution Training, Inc. of any dispute regarding the Service Fee calculation for the relevant DMCP/WCR session within fifteen (15) days of receiving such report. Instructor will be deemed to have accepted all reports for which Conflict Resolution Training, Inc. does not receive timely notification of a dispute.

**6. Status as an Independent Contractor**. Instructor is an independent contractor pursuant to this Agreement. Nothing in this Agreement creates any agency, joint venture, partnership, franchise, or other form of joint enterprise, employment or fiduciary relationship between the parties. Neither Party has any express or implied right or authority to assume or create any obligations on behalf or in the name of the other Party or to bind the other Party to any contract, agreement, or undertaking with any program participant or other third party. At all times during the Term, Conflict Resolution Training, Inc. and Instructor shall be responsible for reporting and paying their own taxes, whether incurred at the federal, state or local level. Conflict Resolution Training, Inc. shall be responsible for providing Instructor with IRS Form 1099 for any Service Fees paid to Instructor.

**7. Additional Engagement**. In addition to Instructor's Engagement outlined in Paragraphs 1-6 above, Conflict Resolution Training, Inc. may, from time to time, as a result of negotiated contracts between Conflict Resolution Training, Inc. and its clients, offer Instructor additional engagement of Instructor's services outside of the Instructor Training Area as an Independent Contractor. Instructor understands and agrees that such offers of engagement shall be at the sole discretion of Conflict Resolution Training, Inc. and Instructor understands and agrees that the terms of any such engagement will vary on a case-by-case basis. Instructor shall have the right to accept or reject any such additional engagement offers.

8. **Termination**. The Parties may dissolve their business arrangement at any time upon their mutual consent. Either Party may terminate this Agreement if the other Party is in material breach of any of its obligations under this Agreement and fails to cure same within fifteen (15) days of receipt of notice of such breach.

9. **Death of Party**. The death of Instructor shall terminate this Agreement.

10. **Non-Compete and Non-Solicitation**. Throughout the Term, and for a period of two (2) years thereafter, Instructor shall not, without the express written consent of Conflict Resolution Training, Inc., which consent may be withheld in Conflict Resolution Training, Inc.'s sole discretion: (i) directly or indirectly engage in, have an ownership interest in, or render services of any nature to, any business that would be considered similar in nature to the business of Conflict Resolution Training, Inc.. or its subsidiaries or assigns, (ii) engage in any business with Conflict Resolution Training, Inc.'s current or former clients, customers, contractors or agents in furtherance of such business within a fifty (50) mile radius of the Instructor Training Area, or (iii) solicit any Independent Instructor, Independent Contractor, officer, staff member or employee of Conflict Resolution Training, Inc., or its subsidiaries or assigns, for any purpose. Conflict Resolution Training, Inc. shall be entitled to injunctive relief for any violation of this Paragraph.

The Parties agree that the duration, scope, and geographical area of the restrictions contained in this Paragraph are reasonable. Upon a determination that any term or provision of this Paragraph is invalid, illegal or unenforceable, the court may modify this Paragraph to substitute the maximum duration,

3

scope, or geographical area legally permissible under such circumstances to the greatest extent possible to effect the restrictions originally contemplated by the Parties hereto.

**11. Confidentiality.** All non-public, confidential or proprietary information of Conflict Resolution Training, Inc.("Confidential Information") disclosed by Conflict Resolution Training, Inc. to Instructor, whether disclosed orally or disclosed or accessed in written, electronic, or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," in connection with this Agreement is confidential, solely for Instructor's use in permitting their obligations under this Agreement and may not be disclosed or copied or used for any other purpose unless authorized by Conflict Resolution Training, Inc. in writing. Confidential information does not include any information that: (a) is or becomes generally available to the public, other than as a result of Instructor's breach of this Agreement; (b) is obtained by Instructor on a non-confidential basis from a third party that was not legally or contractually restricted from disclosing such information; or (c) Instructor establishes by documentary evidence, was in Instructor's possession prior to Conflict Resolution Training, Inc.'s disclosure hereunder. Upon Conflict Resolution Training, Inc.'s request, Instructor shall promptly return all documents and other materials received from Conflict Resolution Training, Inc. Conflict Resolution Training, Inc. shall be entitled to injunctive relief for any violation of this Paragraph.

12. **Indemnification.** Instructor shall indemnify, defend and hold harmless Conflict Resolution Training, Inc. and its officers, directors, employees, agents, affiliates, successors, and permitted assigns (collectively "Indemnified Party") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, fees and the costs of enforcing  any right to indemnification under this Agreement, and the cost of pursuing any insurance providers, incurred by Indemnified Party, relating to any claim of a third party or Conflict Resolution Training, Inc. arising out of or occurring in connection with Instructor's negligence, willful misconduct, or breach of this Agreement. Instructor shall not enter into settlement of any claim without Conflict Resolution Training, Inc.'s or Indemnified Party's prior written consent.

**13. Limitation of Liability**. In no event will Conflict Resolution Training, Inc. be liable to Instructor for: (a) any loss of use, revenue, or profit or for any consequential, incidental, indirect, exemplary, special, or punitive damages whether arising out of breach of contract, tort (including negligence) or otherwise, regardless of whether such damage was foreseeable and whether or not Conflict Resolution Training, Inc. has been advised of the possibility of such damages; or (b) direct damages of more than the aggregate amount of service fees paid to Instructor in the twelve month period pre ceding the event giving rise to the claim.

14. **Restriction on Transfer**. Instructor may not assign any of its rights or delegate any of its obligations under this Agreement without the prior consent of Conflict Resolution Training, Inc., which consent may be withheld in Conflict Resolution Training, Inc.'s sole discretion. Any purported assignment or delegation in violation of this Paragraph is null and void. No such assignment or delegation relieves Instructor of any of its obligations under this Agreement. Conflict Resolution Training, Inc. may assign any of its rights or delegate any of its obligations to any parent or subsidiary corporation of Conflict Resolution Training, Inc. or to any purchaser acquiring all or substantially all of Conflict Resolution Training, Inc.'s assets. This Agreement is binding upon and inures to the benefit of the Parties and their respective successors and permitted assigns.

**15. Arbitration.** Except with the right of Conflict Resolution Training, Inc. to obtain injunctive or other equitable relief under Paragraphs 9 and 10 above, any dispute arising out of or related to this Agreement that the Parties are unable to resolve themselves shall be settled by arbitration in the State of Delaware in accordance with the rules of the American Arbitration Association. The written decision

of the arbitrator(s), as applicable, shall be binding upon the Parties and may be enforced through legal action in the courts.

16. **Severability**. If any provision of this Agreement is held to be invalid, illegal, or unenforceable in whole or in part the remaining provisions shall not be affected and shall continue to be valid, legal and enforceable as though the invalid, illegal or unenforceable parts had not been included in this Agreement.

17. **Governing Law; Choice of forum**. This Agreement will be governed in accordance with the laws of the State of Delaware without giving effect to any conflict of laws provisions thereof that would result in the application of the laws of a different jurisdiction. Subject to Paragraph 16, any legal suit, action or proceeding arising out of or related to this Agreement and all contemplated transactions shall be instituted exclusively in the state or federal courts of Delaware. Each party irrevocably: (a) submits to the exclusive jurisdiction of such courts; and (b) waives any objection to such courts based on venue or inconvenience.

18. **Headings**. The section headings herein are for reference purposes only and shall not otherwise affect the meaning, construction, or interpretation of any provision of this Agreement.

19. **Entire Agreement**. This Agreement contains the entire understanding between the Parties and supersedes and cancels all prior Agreements of the Parties, whether oral or written, with respect to the subject matter of the Parties' business endeavor.

20. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

21. **Amendment**. This Agreement may be amended or modified only by a written Agreement signed by the Parties.

22. **Notices**. Any notice or other communication given or made to any Party under this Agreement shall be in writing and delivered by hand, sent by overnight courier service or sent by certified or registered mail, return receipt requested, to the address stated above or to another address as that Party may subsequently designate by notice and deemed given on the date of delivery.

23. **Waiver**. No Party shall be deemed to have waived any provision of this Agreement or the exercise of any rights held under this Agreement unless such waiver is made expressly and in writing. Waiver by any Party of a breach or violation of any of the provisions of this Agreement shall not constitute a waiver of any other subsequent breach or violation.

**IN WITNESS HEREOF**, this Agreement has been executed and delivered as of the date first written above.

## SIGNATURES

**CONFLICT RESOLUTION TRAINING, INC.**
By its authorized agent

**INDEPENDENT INSTRUCTOR:**

DocuSigned by:

*katherine ko*

9690E39F8D7F452...

_____

Name: Susan Deveney

_____

Name: Katherine Ko

5