# EXHIBIT D

State of Rhode Island

## Independent Instructor Agreement

This Independent Instructor Agreement (the "**Agreement**") is made as of the 1st day of September, 2020 (the "Effective Date") by and between Conflict Resolution Training, Inc. ("CRT"), a Rhode Island corporation, with a principal place of business at 42 Ladd Street, East Greenwich, RI 02818 and Elizabeth Owen, ("Instructor") an Independent Instructor, located at 30 Whitecliff Drive, Pittsford, NY 14534 (each a "Party" and collectively, the "Parties")

**WHEREAS**, CRT is in the business of providing continuing education classes and programs throughout the United States; and

**WHEREAS**, Instructor desires to work for CRT as an independent contractor to render services to CRT as an instructor for participants in CRT's Divorce Mediation Training Program within a certain area of the State of New York, as defined in Appendix 1, attached hereto and made a part hereof by reference, (hereinafter "Instructor Training Area"); and

**WHEREAS**, CRT wishes to engage Instructor and Instructor is willing to act as an independent contractor to render the services as provided herein in accordance with the terms and conditions hereinafter set forth.

**NOW THEREFORE**, in consideration of the mutual covenants, terms, and conditions set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Instructor Engagement**. CRT hereby appoints Instructor, and Instructor accepts such appointment, during the Term (as defined hereafter) to act as CRT's Independent Instructor within the Instructor Training Area.

2. **Term of Agreement**. The initial term of this Agreement shall commence on the Effective Date and will continue through December 31, 2021, unless terminated earlier in accordance with the terms of this Agreement (the "Initial Term".) The Parties may mutually agree by written agreement, prior to the expiration of the Initial Term or any Renewal Term (as hereinafter defined,) as the case may be, to extend the term of this Agreement for an additional period to be agreed upon, subject to early termination, in accordance with this Agreement (any such period being the "Renewal Term"). The Initial Term, together with the Renewal Term, if exercised, shall be referred to as the "Term."

3. **Parties' Obligations**. Conflict Resolution Training, Inc. shall (i) provide Instructor with access to CRT's knowledge, skill, experience in the business of mediation training, including its work product relating to the Divorce Mediation Training Program ("DMTP") which includes but is not limited to the content and curriculum of the DMTP and the DMTP training systems, methodologies and materials, all of which the Parties agree is, and shall remain, the sole property of Conflict Resolution Training, Inc. and (ii) Pay to Instructor a Service Fee (as defined herein) in accordance with Paragraph 4 hereof and (iii) provide administrative assistance with respect to the DMTP for which Instructor shall render services. Such assistance shall include but not be limited to communicating with program participants via telephone, email and/or website chat about course details and requirements; maintenance of a website that describes details and permits registration for DMTP sessions offered by Instructor; preparation and ordering of program materials; and maintaining continuing education approvals for the DMTP in the Instructor Training Area.

1

Instructor shall (i) conduct a minimum of two (2) four-day DMTP courses within the Instructor Training Area; and (ii) schedule, book venues for and promote the DMTP and its course-related materials in a manner that is reasonably satisfactory to CRT; and (iii) bear responsibility for expenses related to processing credit card transaction fees for tuition and materials paid by participants in the DMTP who reside in the Instructor Training Area; and for fees charged by venues selected by Instructor for holding the DMTP; and for marketing/advertising expenses incurred in promoting the DMTP within the Instructor Training Area; and the Instructor's own travel-related expenses and the cost of videotaping participant testimonials, not more than once per year, for CRT's exclusive use in promoting its courses; and (iv) within five (5) days) of the Effective Date, pay to CRT the sum of fifteen thousand ($15,000) to be held by CRT until such time as Instructor has presented the DMTP to two hundred (200) participants who have paid the full tuition price for the DMTP within the Instructor Training Area, during the Term of this Agreement as defined in Paragraph 2 above. In the event that Instructor does not present the DMTP to a minimum of two hundred (200) participants during the term of the Parties' Agreement, then CRT shall be entitled to keep said sum as liquidated damages for loss of anticipated revenues under this Agreement.

### 4. Instructor Service Fee.

A. Calculation of Service Fee

(i) DMTP Tuition and Materials Fees – Except as otherwise provided in Section 4(A)(iii), Instructor shall earn a fee for services rendered ("Service Fee") equal to seventy percent (70%) of net revenues generated from tuition and DMTP-related materials by DMTP courses presented by Instructor in the Instructor Training Area, less the expenses contemplated by Section 4(A) (ii) incurred by CRT related thereto.

(ii) Expenses – Service fees shall be net of any costs incurred by CRT in connection with the DMTP presented by Instructor in the Instructor Training Area, including, without limitation, the cost of DMTP materials, and a three percent (3%) credit card processing fee for payments from participants for tuition and/or program materials, whether such DMTP and/or materials are for on-site of online classes. Further, should Instructor, in her sole discretion, choose to join CRT's current digital marketing efforts, Instructor shall reimburse CRT for the cost incurred by CRT for such marketing effort within the Instructor Training Area.

(iii) Sharing of Service Fee – Notwithstanding the foregoing, when revenue generated from tuition and DMTP materials are derived from efforts made by another Independent Instructor engaged by CRT, but Instructor provides the instruction and training serves to the participant, Instructor and the other Independent Instructor shall each be entitled to thirty-five percent (35%) of net revenue generated from such tuition and materials, and in each instance, net of expenses as set forth in Section 4(A) ii) incurred by CRT related thereto.

B. Service Fee Payment Terms

(i) Payment Date – Service Fees shall be payable to Instructor within thirty (30) days after Instructor's full presentation of the session of the DMTP for which revenue was earned.

2

      (ii) Payment of Service Fees upon Termination – Upon the termination of this Agreement, whether upon the expiration of the Term, or as otherwise set forth in this Agreement, CRT shall continue to pay Instructor her/his Service Fees in accordance with Section 4(A) on net revenues received, due to Instructor's efforts, for a period of ninety days after the termination date. Other than as set forth in this Section 4, Instructor waives any right it may have to further compensation upon termination of the Agreement.

**5. Accounting.** CRT shall keep records of all revenue generated in the Instructor Training Area, and submit a report to Instructor at the conclusion of each session of the DMTP presented by Instructor that contains an accounting of the Instructor's Service Fee due for said DMTP session. Such accounting shall include an itemization of revenue due and any expenses (as contemplated in Paragraph 4) owed by Instructor. Instructor shall notify CRT of any dispute regarding the Service Fee calculation for the relevant DMTP session within fifteen (15) days of receiving such report. Instructor will be deemed to have accepted all reports for which CRT does not receive timely notification of a dispute.

**6. Status as an Independent Contractor.** Instructor is an independent contractor pursuant to this Agreement. Nothing in this Agreement creates any agency, joint venture, partnership, franchise, or other form of joint enterprise, employment or fiduciary relationship between the parties. Neither Party has any express or implied right or authority to assume or create any obligations on behalf or in the name of the other Party or to bind the other Party to any contract, agreement, or undertaking with any program participant or other third party. At all times during the Term, CRT and Instructor shall be responsible for reporting and paying their own taxes, whether incurred at the federal, state or local level. CRT shall be responsible for providing Instructor with IRS Form 1099 for any Service Fees paid to Instructor.

**7. Termination.** The Parties may dissolve their business arrangement at any time upon their mutual consent. Either Party may terminate this Agreement if the other Party is in material breach of any of its obligations under this Agreement and fails to cure same within fifteen (15) days of receipt of notice of such breach.

**8. Death of Party.** The death of Instructor shall terminate this Agreement.

**9. Non-Compete and Non-Solicitation.** Throughout the Term, and for a period of two (2) years thereafter. Instructor shall not, without the express written consent of CRT, which consent may be withheld in CRT's sole discretion: (i) directly or indirectly engage in, have an ownership interest in, or render services of any nature to, any business that would be considered similar in nature to the business of Conflict Resolution Training, Inc. or its subsidiaries or assigns, (ii) engage in any business with CRT's current or former clients or customers in furtherance of such business within a fifty (50) mile radius of the Instructor Training Area, or (iii) solicit any Independent Instructor, Independent Contractor, officer, staff member or employee of CRT, or its subsidiaries or assigns, for any purpose. CRT shall be entitled to injunctive relief for any violation of this Paragraph.

The Parties agree that the duration, scope, and geographical area of the restrictions contained in this Paragraph are reasonable. Upon a determination that any term or provision of this Paragraph is invalid, illegal or unenforceable, the court may modify this Paragraph to substitute the maximum duration, scope, or geographical area legally permissible under such circumstances to the greatest extent possible to effect the restrictions originally contemplated by the Parties hereto.

10. **Confidentiality.** All non-public, confidential or proprietary information of CRT ("Confidential Information") disclosed by CRT to Instructor, whether disclosed orally or disclosed or accessed in written, electronic, or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," in connection with this Agreement is confidential, solely for Instructor's use in permitting its obligations under this Agreement and may not be disclosed or copied or used for any other purpose unless authorized by CRT in writing. Confidential information does not include any information that: (a) is or becomes generally available to the public other than as a result of Instructor's breach of this Agreement; (b) is obtained by Instructor on a non-confidential basis from a third party that was not legally or contractually restricted from disclosing such information; or (c) Instructor establishes by documentary evidence, was in Instructor's possession prior to CRT's disclosure hereunder. Upon CRT's request, Instructor shall promptly return all documents and other materials received from CRT. CRT shall be entitled to injunctive relief for any violation of this Paragraph.

11. **Indemnification.** Instructor shall indemnify, defend and hold harmless CRT and its officers, directors, employees, agents, affiliates, successors, and permitted assigns (collectively "Indemnified Party") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, fees and the costs of enforcing any right to indemnification under this Agreement, and the cost of pursuing any insurance providers, incurred by Indemnified Party, relating to any claim of a third party or CRT arising out of or occurring in connection with Instructor's negligence, willful misconduct, or breach of this Agreement. Instructor shall not enter into settlement of any claim without CRT's or Indemnified Party's prior written consent.

12. **Limitation of Liability**. In no event will CRT be liable to Instructor for: (a) any loss of use, revenue, or profit or for any consequential, incidental, indirect, exemplary, special, or punitive damages whether arising out of breach of contract, tort (including negligence) or otherwise, regardless of whether such damage was foreseeable and whether or not CRT has been advised of the possibility of such damages; or (b) direct damages of more than the aggregate amount of service fees paid to Instructor in the twelve month period pre ceding the event giving rise to the claim.

13. **Restriction on Transfer**. Instructor may not assign any of its rights or delegate any of its obligations under this Agreement without the prior consent of CRT, which consent may be withheld in CRT's sole discretion. Any purported assignment or delegation in violation of this Paragraph is null and void. No such assignment or delegation relieves Instructor of any of its obligations under this Agreement. CRT may assign any of its rights or delegate any of its obligations to any parent or subsidiary corporation of CRT or to any purchaser acquiring all or substantially all of CRT's assets. This Agreement is binding upon and inures to the benefit of the Parties and their respective successors and permitted assigns.

14. **Arbitration.** Except with the right of CRT to obtain injunctive or other equitable relief under Paragraphs 9 and 10 above, any dispute arising out of or related to this Agreement that the Parties are unable to resolve themselves shall be settled by arbitration in the State of Rhode Island in accordance with the rules of the American Arbitration Association. The written decision of the arbitrator(s), as applicable, shall be binding upon the Parties and may be enforced through legal action in the courts.

15. **Severability**. If any provision of this Agreement is held to be invalid, illegal or unenforceable in whole or in part the remaining provisions shall not be affected and shall continue to be valid,

legal and enforceable as though the invalid, illegal or unenforceable parts had not been included in this Agreement.

16. **Governing Law; Choice of forum**. This Agreement will be governed in accordance with the laws of the State of Rhode Island without giving effect to any conflict of laws provisions thereof that would result in the application of the laws of a different jurisdiction. Subject to Paragraph 16, any legal suit, action or proceeding arising out of or related to this Agreement and all contemplated transactions shall be instituted exclusively in the state or federal courts of Providence, Rhode Island. Each party irrevocably: (a) submits to the exclusive jurisdiction of such courts; and (b) waives any objection to such courts based on venue or inconvenience.

17. **Headings**. The section headings herein are for reference purposes only and shall not otherwise affect the meaning, construction or interpretation of any provision of this Agreement.

18. **Entire Agreement**. This Agreement contains the entire understanding between the Parties and supersedes and cancels all prior Agreements of the Parties, whether oral or written, with respect to the subject matter of the Parties' business endeavor.

19. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

20. **Amendment**. This Agreement may be amended or modified only by a written Agreement signed by the Parties.

21. **Notices**. Any notice or other communication given or made to any Party under this Agreement shall be in writing and delivered by hand, sent by overnight courier service or sent by certified or registered mail, return receipt requested, to the address stated above or to another address as that Party may subsequently designate by notice and deemed given on the date of delivery.

22. **Waiver**. No Party shall be deemed to have waived any provision of this Agreement or the exercise of any rights held under this Agreement unless such waiver is made expressly and in writing. Waiver by any Party of a breach or violation of any of the provisions of this Agreement shall not constitute a waiver of any other subsequent breach or violation.

**IN WITNESS HEREOF**, this Agreement has been executed and delivered as of the date first written above.

## SIGNATURES

| CRT: | INSTRUCTOR: |
|---|---|
| Conflict Resolution Training, Inc. | |
| By: _____ | By: _____ |
| Name: | Name: Elizabeth Owen |

5

Appendix 1

To the Agreement dated September 1, 2020

By and between Conflict Resolution Training, Inc. and Elizabeth Owen

The geographic area for which Elizabeth Owen, Independent Instructor, shall be responsible for presenting the DMTP pursuant to the terms of this Agreement shall include the following cities/towns:

All of the cities and towns within the State of New York that include and are geographically north of the Town of Poughkeepsie, New York.